All rise. Oh yes, oh yes, oh yes. The Honorable Blood Court, 5th District, State of Illinois, is now in session. Please be seated. Good morning, ladies and gentlemen. The first case on today's docket is the case of Doe v. Styve. I'm not sure. And we have Gene Zeiger for the appellant and Samantha Unzel for the athlete. And you may proceed when you're prepared to. You're here? Yeah. Good morning, Your Honor. Good morning. May it please the Court. Ninety-five days after judgment was entered in the underlying case, Doe filed a motion to file the fifth amended complaint. Nothing else had happened in the interim between the judgment and this motion in the underlying case. There had been no evidence taken. There was no affidavit filed with the motion. There was no reason given in the motion why it couldn't or wasn't brought within 30 days. The only reason stated in the motion was to allege conduct which conforms to the evidence adduced in discovery, not to conform to the proofs because there were no proofs as to Styve, just to conform to the evidence adduced in discovery. There was no fraud alleged, no duress, no newly discovered evidence, no indication that the motion was agreed. And we know that it wasn't agreed because Styve's counsel of record filed an objection to the jurisdiction of the Court to file this motion, to bring this motion. Why would Doe, over three months after a consent settlement and a consent judgment with Styve, why would he do this? This was a transparent attempt to trigger insurance coverage under a reliance policy that was the subject of a declaratory action. It was one of a series of amendments designed to trigger coverage. Unquestionably, this wasn't done within 30 days as required by Section 1301 of the Civil Practice Act, and the motion was not in conformity with Section 2-1401 of the Civil Practice Act, and there's just no dispute as to that. Just for some background, originally, with the original complaint, Reliance Insurance Company agreed to defend Styve under reservation of rights. There was another insurance policy issued for the school board. They denied coverage because the original complaint was not alleging gaps within the course and scope of his duties as a teacher. Reliance picked up the defense, and then they were liquidated. The Illinois Insurance Guarantee Fund is obligated under the statute to step into the shoes of the insurer to the extent of covered claims. It's our understanding under Illinois law that once an insurer accepts a defense, they can't simply withdraw it absent a declaration that they have no duty to defend. So the Guarantee Fund agreed to continue funding Mr. DeFranco, who had been defending on behalf of Reliance, and filed their declaratory. Meanwhile, the school board, the co-defendants in this case, the underlying case, settled out with Doe for $90,000 out of their $1 million policy, leaving over $900,000 in insurance. And then Doe started a series of amendments designed to attack the declaratory, but he's intending to trigger coverage under the insurance policy. The third amended complaint, Doe alleged that Styve negligently, within the course and scope of his duties as a teacher, formed a sexual relationship with the minor plaintiff. The concept, obviously that's intended to, the negligence allegations are intended to trigger insurance coverage, and the concept of negligently forming a sexual relationship might be amusing if it weren't so disturbing in this context. That only lasted about a week because he pointed out in our declaratory action that this was the judicial admission of a sexual relationship with the minor. So Doe ran into court here and filed a fourth amended complaint alleging Styve's negligence within the course and scope of his duties as a teacher, and that he failed to notify the parents of the girl's conduct. He failed to supervise her, and that he formed an inappropriate relationship. The fund, the fund didn't realize that this had actually been filed. This was a motion for leave to file it. When we realized it had been filed, we asked Attorney DeFranco if he was going to raise statutory immunities because it alleged negligence within the course and scope of his duties as a teacher, for which he is statutorily immune under the school code. DeFranco stated he's not going to do that because it might mess up the settlement. And in fact, soon after the case was settled, on February 5th, 2009, a consent judgment was entered in this case in the amount of $300,000, which just happens to be the fund's statutory limit. And under the settlement, Styve transferred to Doe any process of action against any insurers, and it was agreed that the judgment would not be enforced against Stevie's personal assets. The fund thought, this is over now, at least he can't, at least after 30 days, he can't run in and amend again. So after 30 days, we filed heedings in our declaratory action, asserting a statutory defense under the Guarantee Fund Act, because if this is a judgment, if this is a cause of action in the course and scope of his duties as a teacher, this is the school board's policy. They have an obligation under the Guarantee Fund Act to exhaust other sources of insurance. The fund was created by the legislature, and it's intended to be a last source. You go to insurance policies first, and the Guarantee Fund is funded by premium. All insurers operating in Illinois contribute to this fund, and the money ultimately comes from you and me and every policyholder in Illinois. So we raised the statutory defense in the declaratory, and the next thing we know, three months after the judgment here, we see a motion for leave to file a Fifth Amendment complaint, which removed the course and scope allegations and also removed the inappropriate conduct. Again, he's trying to come within the coverage of a liability policy, and he's seeking to evade the fund's statutory and policy defenses in a declaratory action. We asked Attorney DeFranco if he was going to object. He said no, so we filed a petition to intervene. The point of intervening was to file an opposition to the motion, raising our objections to the court's jurisdiction. Attorney DeFranco then surprised us by filing something that was titled Objection to Jurisdiction of Court. He went on to say, as attorney of record for Stevie, he objected to the court's jurisdiction to amend or modify the stipulated judgment. Although Stevie had assigned his rights against other insurers, Stevie still has interests of his own reputation. Stevie, his attorney, is protecting his interests. He wasn't protecting the funds. The trial court ruled that Stevie's objection was moot. There was no indication in the court record that Stevie's objection was withdrawn. Rather, the trial court ruled on the objection, rejected it, ruled that it was moot. He denied our petition to intervene and allowed Stevie to file the fifth amended complaint. At that point, Doe's attorney handed the court an amended judgment order, and the judge entered it. It dictated, it stated that it was entered by consent, which clearly was not. It stated that it was entered non-croton, and that all of the judgment entered on February 5th, 2009, was for activities which were outside the course and scope of Stevie's duties as a teacher. This was clearly not the case. There was nothing whatsoever in the record at that point to indicate anything outside the course and scope. The fourth amended complaint stated that it was within the course and scope. We filed an appeal of that order, and I believe we cited law that it is appropriate to, while you're pursuing an appeal, to file a 214-01 petition. We filed one supported by affidavit to give the trial court an opportunity to explain, to flesh out the facts, and to give the court an opportunity to do the right thing. Doe objected on the grounds that we had no standing, and the trial court denied our motion. His reply brief with respect to the motion to dismiss, filed in November of 2009, attached for the first time Stevie's deposition transcript and the release. It was never in the court record before, and the release, by the way, among other things, asserts that he's releasing activities within the court, his supervision as a teacher. Clearly, there was a violation of Section 213-01 of the Civil Practice Act, and Section 214-01. There was no effort to comply with these. Doe argues that this is by consent, and this is just flatly contradicted by the record. Stevie's attorney filed a written objection to the jurisdiction. In response to the motion to file a Fifth Amendment complaint, Stevie's attorney, of his own volition, filed an objection to the court's jurisdiction, pointing out that it was past the 30 days. He objected to the entry of anything modifying the stipulated judgment order. It's simply not true. It was not done by consent. Doe urges that there's a conflict of interest that prevents us from doing this, and that's simply not true. It's a one-count complaint asserting negligence, and this court has ruled in the Shelton Shelter that where you only have a negligence count, there is no conflict of interest. Also, if we were controlling his defense, we wouldn't be here because there would be no consent judgment, and he would have done what he was supposed to do. Stevie's own counsel was also involved in this case, so there is no conflict. It can't be a non-proton order because there was nothing in the record prior to November 2009 indicating anything showing that this was outside the course and scope of Stevie's duties as a teacher, and this can't be within Section 2616 because 616 does not... Statutes are construed consistent with other statutes. 616 allows one to amend after judgment to conform the pleadings to the proof, but would it still have to be done within 30 days? There's no case law allowing an amendment to conform the judgments to the proof after 30 days have passed. Besides, there were no proofs in the record on which the court could have done this. It was an abuse of discretion for the court to allow the amendment. As far as our intervention in 214-01, Herbert v. Brewer is instructive because in that case the insurer was not the party when the original judgment was entered, which was a similar situation where they basically tossed the insurer to the wolves and then filed an amended... There was an amended judgment which increased the insurer's liability to $500,000 based upon a mutual mistake of that. The trial court there dismissed the insurer's 214-01 petition for lack of standing, and the appellate court held that the insurer had standing to intervene and to file a 214-01 petition because they're clearly privy to the record, implicit in the opinion is that. And the insurer was injured by the amended judgment. Similarly here, we are privy to the record and the whole point of Doe's activities were to adversely affect the fund's interest with respect to its declaratory action. They're attempting to trigger coverage under the policy. They complain that this is intervention after judgment, but in Herbert, the court was... after the judgment was entered. Besides, we never would have done this after judgment if Doe hadn't done this after judgment. We only did this after judgment because Doe came in and filed this 3 months after the judgment. And just in terms of general principles of justice, I mean, in law school, one of the definitions of justice is predictability, that there are rules which we all have to follow so we know what's happening. There's stare decisis, so we know what's going to happen. It's simply wrong to try to change the rules after the game has already ended. This is highly improper, and the court should not allow this kind of gamesmanship. Thank you, Ms. Zeiger. You'll have the opportunity for rebuttal. Ms. Hudson. May it please the court. This case comes down to two simple questions. Was there a conflict of interest between Stive and the fund? If so, intervention was appropriately denied. And did Doe and Stive consent to the entry of the amended judgment order and Doe's filing of the Fifth Amendment complaint? If so, the court had jurisdiction. If there is a true conflict of interest between an insurer and an insured, intervention should be denied. There's extensive case law on this, including the Supreme Court case Thornton and Maryland Casualty and the cases that followed those. Those cases stand for the proposition that conflicting interests between an insurer and insured, an insurer is not a stop from raising the defense of non-coverage in a subsequent proceeding such as a declaratory judgment. Therefore, the insurers would not be bound by any judgment or order in the underlying action and they cannot intervene as a matter of right. This not only is the law, it should be the law. An insurer should not be able to intervene in the underlying action when their interests are adverse to that of the insured. In this case, the fund claims that there's no conflict of interest because Doe has not alleged two alternative theories of liability such as negligence and intentional conduct, but only alleged negligent conduct. But we have alleged two theories throughout this case. One, that the actions were within the scope of the employment. One, that they were outside the scope of the employment. So Stye's actions could be argued to be both. In our Fourth Amendment complaint, we allege that Stye's conduct was within the course and scope of his employment and no coverage would be afforded for that. In the Fifth Amendment complaint, we allege that his conduct was outside his scope of employment and therefore there would be coverage for that. Stye benefits by proving that his conduct was outside the scope because then there's coverage. The fund benefits by proving that his conduct was within the scope and there wouldn't be coverage. There couldn't be a more obvious conflict of interest. Additionally, Attorney Jim DeFranco, who was hired by the fund, filed a motion to withdraw his counsel, which was heard at the same hearing the petition to intervene was heard, and it was based on his belief that there was a conflict of interest. He refused to file a motion to dismiss the Fifth Amendment complaint alleging statutory immunities, as requested by the fund, because, and I quote, he said, pursuing that motion to dismiss would not be in the best interest of my client. End quote. How can the fund assert that there's no conflict of interest when the attorney hired by them to represent their insurer refuses to cooperate because it's not in the best interest of his client? The standard of review for this is abuse of discretion, and that's been reiterated by the Supreme Court. The fund asserts that the fact that they filed this 214-01 petition subjects this entire appeal to a de novo review, but there's nothing in the fund's brief which supports this. We respectfully disagree, and the decision to grant or deny intervention is clearly reviewed under an abuse of discretion standard. As to the second question, did the parties consent to the entry of the amended judgment order, and Doe's filing of the Fifth Amendment complaint? The law is well settled in Illinois that jurisdiction of the court is extended when orders are entered or proceedings are conducted by the consent of the parties. The only parties to this action at the time these orders were entered were Stive and Doe. Consent is all that is needed. Additionally, nothing in opposing counsel's brief contradicts this well-settled law. In this case, Doe and Stive consented to the entry of the amended judgment order and the written order granting Doe's motion to file the Fifth Amendment complaint. Therefore, the court had jurisdiction. It's as simple as that. The fund argues in its reply that Doe has somehow waived the argument that the trial court had jurisdiction to enter those orders. I'd like to point out to the court on page 13 and 14 of my brief, under the heading, the court had jurisdiction to enter those orders, I've argued that the parties consented and the fund stands alone in its objection to jurisdiction of the court. And the parties did agree, a point which the fund also continually denies. The amended judgment order, in the order itself, states by consent of the parties. It appears that counsel is perhaps suggesting that Judge Machine would enter an order that states by consent of the parties when, in fact, the parties did not actually consent. And I can tell you that is not the case. Stive's attorney did file a document entitled Objection to Jurisdiction of the Court in Motion to Withdraw. That motion clearly states that his objection to the jurisdiction of the court is that the court got to modify or amend the previous stipulated judgment order. In fact, the relief that he requested, and I quote, is that the court enters an order finding that none of the relief requested affects the former consent judgment, end quote. And such an order was granted. In fact, it was handwritten by Stive's attorney, Jim DeFranco. And it states, Stive's objection to jurisdiction is moot as Jane Doe does not seek to alter the terms of the judgment relating to enforcement of the amount of judgment against Stive's personal assets, end quote. Moot. The objection was moot. How can the fund maintain that the written order, which is authored by Stive's attorney, and the amended judgment order, which states by consent of the parties, were entered over Stive's objection? Additionally, that same written order granted Doe's motion to file the fifth amended complaint, which was never objected to by Stive. The only objection, possible objection, in his objection to jurisdiction of the court had to do with amending or modifying the stipulated judgment order. And I'd also like to point out to this court that we're not here in the appellate court today because Stive has appealed. Because he did. Which further corroborates that he consented to the entry of those orders. We're here because the fund appealed. While it is Doe's position that consent is all that is needed for there to be jurisdiction to enter those orders, I do maintain that there was jurisdiction to enter the amended judgment order non-court-tongue because it was a proper non-court-tongue order. And I also maintain that the court had jurisdiction to grant Doe's fifth amended complaint, which he'd sue into 616C. The court has jurisdiction to correct a judgment order non-court-tongue to conform to the judgment rendered when it's based on a note or memorandum in the files or quasi-files of the court. Here, the amended judgment order was entered non-court-tongue to reflect the judgment that was actually agreed to by the parties as indicated in the release. In the release, which was in both parties' files and was presented to the court, which is stated in the amended judgment order that the release had been reviewed, it was signed and notarized prior to the original judgment order which was entered. And it reflects that the original judgment was based on acts which occurred off school property and not during the school year. Therefore, the amended judgment order non-court-tongue, which was based on the release, was entered to reflect that the judgment was for acts outside the course and scope of Stive's employment. The fund contends that the release is not a proper basis for a non-court-tongue order, but the rule for non-court-tongue order is that there must be a note or memorandum in the files or quasi-files of the court. The release was subsequently filed with the court. Both parties to the lawsuit had a copy of the release, and it was presented to the court when the non-court-tongue order was entered. As to the amended complaint, consent aside, this was properly entered under 6160, which states that pleadings may be amended after final judgment to conform the pleadings to the proof. Doe sought to amend her pleading to reflect Stive's actions that were outside the course and scope of his employment. The proofs which it conformed to here were Stive's deposition testimony. He testified to numerous acts which occurred off school property and not during the school year. Therefore, Doe properly sought to remove, within the course and scope of his employment, from the charging allegations. The fund argues that his deposition transcript should not be considered proofs because there was no trial and it was not in the court record. Both parties had access to it. It was subsequently filed. It was not filed originally because there was no party that was objecting to it. So once there was a party objecting, we filed it with the court so that it could be considered proofs. As to the fund's 1401 petition to intervene, they don't have standing to intervene.  And they also assert that they have standing to attack the orders because they're void for lack of jurisdiction on their face, which is false because, as I discussed before, both parties agreed to the court's jurisdiction and the orders were properly entered with the jurisdiction of the court for other reasons. And second, they lack standing because there's a conflict of interest. They're not a stop from asserting this defense in the subsequent declaratory judgment action. They can assert that Stive's actions were within the course of his employment in that action. And they have no standing to attack this judgment because it has no binding effect on them. We asked the court to uphold the trial court's decision to deny the petition to intervene and to grant Doe's leave to file a fifth amendment complaint and the court's entry of the amended judgment order non-court-tongue because there was jurisdiction, as the parties agreed and for the other reasons stated, and also to determine that the fund lacks standing to file its 214-01 petition. Thank you. Thank you, Ms. Evans. You have the opportunity for rebuttal, Ms. Zeiger. Thank you. Counsel contends that there was a conflict citing Maryland casualty. In that case, I'm pretty sure it was an intentional acts case and I believe there was also a negligence count. This is not the case here. This was a one-count complaint alleging negligence. And then she alleges there's a conflict because they alleged activities both inside and outside, only if you listen carefully, she said that was in different complaints. Everything we had on the third and the fourth was alleged to be inside the course and scope of his duties as a teacher. How do you address or what impact do you think it has on your argument that the attorney that was assigned to Stivey's case raised that issue of conflict? Well, I think he's representing his client and he is entitled to say whatever he's going to say, but I think this court has ruled that there is no such conflict under the circumstances where the complaint only alleges negligence. I think he's entitled to say whatever he wants, but that doesn't make it true just as counsel is entitled to say whatever she wants, but that doesn't necessarily mean that's true or that's the law in Illinois. I don't believe there was a conflict of interest here. There was another attorney in there for Stivey and I don't believe there was a conflict of interest at any time here. As far as consent, she's asking the court to suspend disbelief in terms of consent. In response to a motion to file a Fifth Amendment complaint, Stivey's attorney filed an objection to the jurisdiction of the court pointing out as counsel of record for Stivey that 30 days had passed and the court lacks jurisdiction. How can that be consent to an amendment? The fact that he drafted the order, he didn't draft the order saying that he withdrew his objection. He drafted the order according to what the court had ruled. The court had ruled that his objection was moot. How would it be moot other than if he withdrew the objection? I believe the court was saying it was moot because the terms of the judgment relating to the amount of the judgment is not coming from his personal assets. I believe the basis of the judge's ruling is that it's moot because the amended judgment is not coming out of his personal assets. Therefore, it's moot. Or it's moot because he consented to the jurisdiction. That's not reflected in the order. I don't see anything there saying that he withdrew his objection. It's stating his objection to jurisdiction is moot because Jane Doe does not seek to alter the terms of the judgment relating to the amount of the judgment coming out of his personal assets. That's what it says, and I believe that's at C00380. If you look carefully at the order, that's what the judge's order says. It doesn't say he's coming up with a reason why it's moot, and there's no indication that he withdrew his objection. The release was not in the record before, and if you look carefully at that release, it states, among other things, released is any negligent supervision of Tiffany Williams at any time she was a student or otherwise in the company of Patrick Stevie. The facts are not as they're being represented here, and they were never in front of the judge until nine months after the judgment was entered. Do you still have a declaratory judgment action proceeding in the trial court? Yes, Your Honor. And if you're successful in that and there is no coverage, you're not obligated to pay anything? That would be true. Yes, but a void judgment can be attacked at any time, any place. But when does it stop, Your Honor? I mean, if this court rules, can she still run into court with the motion for leave to file a sixth amended complaint because she represents both Stevie and Doe? When does it end? I mean, at some point, it has to be over, and the court in the declaratory has to have a complaint in the judgment on which they can base their ruling. We thought it would be over 30 days after the judgment was entered and be asking you to rule. Thank you, Ms. Zeiger. Thank you, Ms. Unzel, for your arguments and briefs.